**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

_____

| | |
|---|---|
| **JAMES CARTER** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **ADVANCED WALK IN URGENT** | ) |
| **CARE, LLC,** *et al.* | ) |
| | ) |
| **Defendants.** | ) |

_____)

**Civil Action No. PWG-12-3094**

## REPORT AND RECOMMENDATION

This Report and Recommendation addresses Plaintiff James Carter ("Mr. Carter")'s Second Motion for Entry of Default Judgment.  ECF No. 18.[1]  Defendants Advanced Walk In Urgent Care, LLC (doing business as Union Multi-Care Advanced Walk-In Urgent Care), Union Multi-Care of Silver Spring, Union Multi-Care/Advanced Walk-In Urgent Care and Ishtiaq A. Malik, M.D. (collectively "Defendants") have not filed a response and the deadline for the response elapsed on February 27, 2014.  *See* Loc. R. 105.2.a.

On June 13, 2014 the undersigned directed Mr. Carter, within thirty days, to supplement the record by affidavit declaring the number of individuals employed by Defendants during the time period relevant to the allegations in the First Amended Complaint.  ECF No. 21 at 2 ¶ 5.  A copy of the Order was mailed to all Defendants of record.  On July 10, 2014 Mr. Carter sought clarification of the undersigned's order or, in the alternative, moved for default judgment.  ECF No. 22.  Unexpectedly, on July 11, 2014, Ishtiaq A. Malik, the only individual, non-corporate

---

[1] On February 11, 2014, pursuant to 28 U.S.C. § 636 and Local Rules 301 and 302, Judge Grimm referred this case to the undersigned to review a default judgment and/or make recommendations concerning damages.  ECF No. 20.

entity Defendant, filed an affidavit affirming three individuals were employed by Advanced Walk In Care, LLC on July 20, 2012.  ECF No. 23.

On August 6, 2014 Mr. Carter moved for a scheduling order.  ECF No. 24. Two days later, on August 8, 2014, the undersigned granted the motion for a period of ninety days.  The undersigned limited discovery to the issue of "'the number of individuals employed by Defendants during the time period relevant to the allegations in the First Amended Complaint.' ECF No. 21 at 2 (Order of June 13, 2014, para. 5)."  ECF No. 26.  Earlier that same day, the undersigned denied without prejudice to renew Mr. Carter's Second Motion for Default Judgment in light of Defendant Advanced Walk In Urgent Care LLC filing an affidavit and Mr. Carter's motion for scheduling order.  ECF No. 25.

On November 6, 2014 Mr. Carter filed a motion to compel discovery.  ECF No. 27.  The undersigned issued an order on December 19, 2014 granting the motion and directing Defendants to answer Mr. Carter's First Interrogatories and First Request for Production of Documents not later than January 21, 2015.  ECF No. 28.

On January 20, 2015, Ishtiaq A. Malik, MD on behalf of Defendants, submitted correspondence addressed to the undersigned regarding employment records.  Dr. Malik claimed three employees worked under Advanced Walk In Urgent Care in the first and second quarters of 2012.

Having reviewed the filings, no hearing is deemed necessary.  *See* Loc. R. 105.6.  For the reasons stated herein, the undersigned recommends that, following the time to object to this Report and Recommendation, Plaintiff's Second Motion for Entry of Default Judgment be DENIED.

## I.      FACTUAL AND PROCEDURAL HISTORY

Plaintiff James Carter is deaf.  Defendant Advanced Walk In Urgent Care LLC "is an organization that owns, operates, and/or leases a medical facility located at 10801 Lockwood Drive, Suite 140, Silver Spring, MD, 20901, Montgomery County."  ECF No. 3 ¶ 3.  At the time Mr. Carter filed his First Amended Complaint, Advanced Walk In Urgent Care LLC was registered as a business entity with the Maryland Department of Assessments and Taxation.  *Id.* Defendant Union Multi-Care of Silver Spring "is an organization that owns, operates, and/or leases a medical facility located at 10801 Lockwood Drive, Suite 140, Silver Spring, MD, 20901, Montgomery County.  Union Multi-Care of Silver Spring is being sued in the event that it is a separate legal entity."  *Id.* ¶ 4.  Defendant Union Multi-Care/Advanced Walk-In Urgent Care "is an organization that owns, operates, and/or leases a medical facility at 10801 Lockwood Drive, Suite 140, Silver Spring, MD, 20901, Montgomery County.  Union Multi-Care/Advanced Walk-In Urgent Care is being sued in the event that it is a separate legal entity."  *Id.* ¶ 5.  Defendant Ishtiaq Malik, MD, an individual, was Mr. Carter's treating physician during the events described in the First Amended Complaint.  Dr. Malik is the registered agent for Defendant Advanced Walk In Urgent Care LLC.  "Ishtiaq Malik, MD is being sued in his official capacity in the event that Advanced Walk In Urgent Care LLC, Union Multi-Care of Silver Spring, and Union Multi-Care/Advanced Walk-In Urgent Care are not legal entities, but Ishtiaq Malik, MD is nevertheless liable for their acts and/or omissions."  *Id.* ¶ 6.

On June 15, 2012 Mr. Carter, whose primary means of communication is American Sign Language ("ASL"), placed a call to Advanced Walk In Urgent Care through a video relay interpreting service.  Mr. Carter informed the individual answering the telephone that he needed medical care and would require a qualified sign language interpreter.  The individual answering

the telephone informed Mr. Carter that Advanced Walk In Urgent Care would not provide a sign language interpreter if he came to the facility for care.  ECF No. 18-5 at 2-3 (Carter Aff. ¶¶ 9-10).

Believing he was in need of immediate attention due to feeling weak and further knowing that Advanced Walk In Urgent Care accepted his health insurance, Mr. Carter decided to go to Advanced Walk In Urgent Care for medical attention.  Mr. Carter lives near Defendants' facility. He arrived at the office approximately one hour after his call.  *Id.* at 3 (Carter Aff. ¶ 11).

Mr. Carter renewed his request for a qualified sign language interpreter upon arrival.  He also requested blood work including an HIV test.  In response to his first request, a member of Defendants' staff responded in writing, "The Dr. will not pay for interpreter."  A qualified sign language interpreter was not provided during Mr. Carter's visit.  Instead the staff at Advanced Walk In Urgent Care attempted to communicate with Mr. Carter via writing notes.  *Id.* (Carter Aff. ¶¶ 12-15).

Mr. Carter contends communicating by writing notes is not an effective method of communication because he does not have a strong command of written English.  *Id.* (Carter Aff. ¶ 16).  Due to Advanced Walk In Urgent Care's refusal to provide a qualified sign language interpreter, Mr. Carter asserts he was unable to communicate effectively with medical staff about his physical condition.  *Id.* (Carter Aff. ¶ 17).  Additionally, due to the lack of a qualified sign language interpreter, Mr. Carter failed to receive from Advanced Walk In Urgent Care adequate information about which tests Advanced Walk In Urgent Care would perform and why those particular tests would be performed.  Moreover, due to the lack of a qualified sign language interpreter, Mr. Carter was not fully informed and thus unable to participate in the decision-making process regarding his health care.  *Id.* at 4 (Carter Aff. ¶¶ 19- 20).

4

Mr. Carter retuned to Advanced Walk In Urgent Care on June 22, 2012, in accordance with what he believed the office instructed, to discuss the results of his blood work.  While at the office Mr. Carter requested a qualified sign language interpreter.  Advanced Walk In Urgent Care did not provide the requested qualified sign language interpreter and instead attempted to communicate via writing notes.  During this session Mr. Carter learned an HIV test had not been conducted despite his earlier request.  Because Advanced Walk In Urgent Care failed to provide a qualified sign language interpreter, Mr. Carter was not fully informed and thus unable to participate in the decision-making process regarding his health care.  *Id.* at 4-5 (Carter Aff. ¶¶ 21-24, 28).

On June 26, 2012 Mr. Carter experienced shortness of breath prompting him to return to Advanced Walk In Urgent Care for medical assistance.  Because Advanced Walk In Urgent Care did not have a qualified sign language interpreter, Mr. Carter was unable to communicate effectively with the staff and therefore was unable to understand why he was experiencing shortness of breath.  Consequently, he was anxious about his medical condition.  *Id.* at 5 (Carter Aff. ¶¶ 29-30).

On July 20, 2012 Mr. Carter sustained a work-related injury; he sought treatment from Advanced Walk In Urgent Care.  Upon arrival Mr. Carter requested, in writing, a qualified sign language interpreter.  Mr. Carter wrote the following to a staff member, "Why can't I get Sign Language Interpreter?"  ECF No. 18-11 at 2.  The staff member responded in writing as follows:

> It is too expensive.
>
> I understand that is your right to get one, but it only applies to medical office with 12 employees or more.

*Id.*

Mr. Carter then wrote in response, "you knew damages of my right in Section of American Disability Act." *Id.* The staff member replied by writing, "As I said it applies to offices with 12 employees or more. You can check a lawyer if you want." *Id.* Mr. Carter wrote in response, "I don't have one yet but I can get more information." *Id.* On this same sheet of paper Mr. Carter expressed his concern about his inability to understand fully what the doctor finds or advises without a qualified sign language interpreter because he (Mr. Carter) does not have a strong command of written English. In response the staff member wrote, "That is why everything is done <u>written</u>. We can keep proof of everything." *Id.* Because Advanced Walk In Urgent Care failed to provide a qualified sign interpreter, Mr. Carter was not fully informed and thus unable to participate in the decision-making process regarding his health care. ECF No. 18-5 at 6 (Carter Aff. ¶ 38).

On October 19, 2012 Mr. Carter filed a Complaint, *see* ECF No. 1, which he modified by filing an Amended Complaint on December 10, 2012, *see* ECF No. 3. Mr. Carter alleges visiting the Advanced Walk In Urgent Care on four occasions in June and July of 2012. On each occasion, Mr. Carter requested and Advanced Walk In Urgent Care failed to provide a qualified sign language interpreter to facilitate Mr. Carter's communications with medical staff. Advanced Walk In Urgent Care opted to communicate with Mr. Carter via writing notes. Mr. Carter, a deaf individual, lacks a strong command of written English and thus is not able to understand fully via this method of communication. Mr. Carter alleges the four Defendants, who are recipients of federal financial assistance since they accept Medicare and Medicaid, violated Section 504 of the Rehabilitation Act of 1973. Specifically, Mr. Carter contends "Defendants have intentionally discriminated against Plaintiff on the basis of his disability by denying Plaintiff auxiliary aids and services necessary to ensure effective communication between

Plaintiff and Defendants, equal access, and an equal opportunity to participate in and benefit from Defendants' health care services[.]"  ECF No. 3 ¶ 42.

Mr. Carter further alleges he is an individual with a disability pursuant to Title III of the Americans with Disabilities Act and the Defendants are places of accommodation pursuant to the same Act.  "Defendants have discriminated against Plaintiff on the basis of his disability by denying Plaintiff auxiliary aids and services necessary to ensure effective communication between Plaintiff and Defendants, equal access, and an equal opportunity to participate in and benefit from Defendants' health care services in violation of Title III of the Americans with Disabilities Act.  42 U.S.C. §§ 12181-12189." *Id.* ¶ 46.

Subject matter jurisdiction is based on Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794[2] and on Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182(a)[3]; subject matter jurisdiction therefore is based on federal questions.  *See* 28 U.S.C. § 1331.[4]  Personal jurisdiction exists over each Defendant based on residency within this judicial district or transactions occurring within this judicial district.  Venue is proper in this judicial district because a substantial part of the events or omissions occurred within the state of Maryland.  *See* 28 U.S.C. § 1391.

Each of the four Defendants was served a "Summons in a Civil Action" on January 8, 2013, *see* ECF No. 10, such that the Answers of the four Defendants were due January 29, 2013.

---

[2] "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."

[3] "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by an person who owns, leases (or leases to), or operates a place of public accommodation."

[4] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

*See* Fed. R. Civ. P. 12(a)(1)(A)(i).   None of the Defendants filed an Answer or otherwise responded to the First Amended Complaint.[5]   On February 5, 2013 Mr. Carter moved for a Clerk's Entry of Default for want of answer or other defense against each Defendant.   *See* ECF Nos. 11-14.   That same day the Clerk of Court entered an Order of Default against the Defendants.   *See* ECF No. 15.   On February 13, 2013 Mr. Carter moved for a default judgment against the Defendants.   *See* ECF No. 16.   The deadline for the Defendants to file a response or opposition to Mr. Carter's Motion for Default Judgment elapsed on March 4, 2013.   On July 23, 2013, Judge Grimm denied Mr. Carter's Motion for Default Judgment, without prejudice, "subject to resubmission with a proper analysis of liability."   ECF No. 17.

On February 10, 2014 Mr. Carter, for a second time, moved for a default judgment against the Defendants.   *See* ECF No. 18.   The deadline for the Defendants to file a response or opposition to Mr. Carter's Second Motion for Default Judgment elapsed on February 27, 2014. In this second motion Mr. Carter withdraws his ADA claim explaining,

> Plaintiff's original complaint alleged violations of Title III of the Americans with Disabilities Act in addition to violations of Section 504 of the Rehabilitation Act.   In light of Defendants' vehement rejection of the legality of this lawsuit, Plaintiff is fearful that he would not receive adequate medical care from Defendants and has no wish to return to their facilities.   Plaintiff therefore withdraws his Title III claim and request for injunctive relief.

ECF No. 18-1 at 2 n.1.   Thus, the undersigned shall address the remaining claim, alleged violations of Section 504 of the Rehabilitation Act.

---

[5] According to John Dermot McMurtry, the process server retained by Mr. Carter, after Mr. McMurtry served the summons upon Ishtiaq A. Malik, M.D., and after Mr. McMurtry declined to provide proof of his identification, Dr. Malik "picked up all four summonses and the attachments and tossed them into a trash bin."   ECF No. 18-4 at 3 (McMurtry Aff. ¶ 8).

## II.    DISCUSSION

Federal Rule of Civil Procedure 55(b) governs the entry of default judgments.  Pursuant to Rule 55(b), the clerk may enter a default judgment "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation," and the defendant is in default for failing to appear and is "neither a minor nor an incompetent person."  Fed. R. Civ. P. 55(b)(1). Additionally, when a defendant is an individual, the plaintiff must certify or declare to be true under penalty of perjury whether the defendant is in military service.  50 U.S.C. app. § 521(b)(1) ("In any action or proceeding covered by this section, the court, before entering judgment for the plaintiff, shall require the plaintiff to file with the court an affidavit— (A) stating whether or not the defendant is in military service and showing necessary facts to support the affidavit; or (B) if the plaintiff is unable to determine whether or not the defendant is in military service, stating that the plaintiff is unable to determine whether or not the defendant is in military service.").

The entry of default judgment is a matter within the discretion of the Court.  *SEC v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005) (citing *Dow v. Jones*, 232 F. Supp. 2d 491, 494 (D. Md. 2002)).  As the Court noted in *Disney Enterprises, Inc. v. Delane*, 446 F. Supp. 2d 402 (D. Md. 2006), "[t]he United States Court of Appeals for the Fourth Circuit has a 'strong policy that cases be decided on the merits.'"  *Id.* at 405 (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)).  Nonetheless, "default judgment is available when the 'adversary process has been halted because of an essentially unresponsive party.'"  *Id.* (quoting *Lawbaugh*, 359 F. Supp. 2d at 421).

In determining whether to award a default judgment, the Court takes as true the well-pleaded factual allegations in the complaint, other than those pertaining to damages.  *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) ("The defendant, by his default,

admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." (citation and internal quotation marks omitted)); *see* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").   It remains, however, "for the court to determine whether these unchallenged factual allegations constitute a legitimate cause of action." *Agora Fin., LLC v. Samler*, 725 F. Supp. 2d 491, 494 (D. Md. 2010); 10A Charles Alan Wright et al., *Fed. Prac. and Proc. Civ.* § 2688 (3d ed. 1998) ("[L]iability is not deemed established simply because of the default . . . and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability."); *id.* (explaining that the court must "consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law").

If the Court finds that "liability is established, [it] must then determine the appropriate amount of damages." *Samler*, 725 F. Supp. 2d at 494 (citing *Ryan*, 253 F.3d at 780-81).   This is so because "an allegation 'relating to the amount of damages' is not deemed admitted based on a defendant's failure to deny in a required responsive pleading." *Hartford Fin. Servs. Grp. Inc. v. Carl J. Meil, Jr., Inc.*, No. WDQ-10-2720, 2011 WL 1743177, at *7 (D. Md. May 5, 2011) (quoting Fed. R. Civ. P. 8(b)(6)); *Trs. of the Elec. Welfare Trust Fund v. MH Passa Elec. Contracting, LLC*, No. DKC-08-2805, 2009 WL 2982951, at *1 (D. Md. Sept. 14, 2009) ("Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not."); *Int'l Painters & Allied Trades Indus. Pension Fund v. Metro Glass & Mirror, Inc.*, No. ELH-11-2389, 2012 WL 893262, at *2 (D. Md. Mar. 14, 2012) ("The

court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations.")

In sum, the Court must make two determinations. First, the Court must decide "whether the unchallenged facts in plaintiff['s] complaint constitute a legitimate cause of action[.]" *Samler*, 725 F. Supp. 2d at 494. Second, if the Court finds that liability is established, it must "make an independent determination regarding the appropriate amount of damages." *Id.*

**Liability**

More than two years have elapsed since the Defendants were served the First Amended Complaint, yet they have not pleaded or otherwise asserted a defense by filing an Answer. As a result, all of the factual allegations made in Mr. Carter's First Amended Complaint not pertaining to damages are deemed admitted. Fed. R. Civ. P. 8(b)(6); *Ryan*, 253 F.3d at 780. Mr. Carter moved for a default judgment (the second time) on February 10, 2014, and the Defendants have not responded. It is within the Court's discretion to grant default judgment when a defendant is unresponsive. *See Park Corp. v. Lexington Ins. Co.*, 812 F.2d 894, 897 (4th Cir. 1987) (upholding a default judgment awarded where the defendant lost its summons and did not respond within the proper period); *Disney Enterprises*, 446 F. Supp. 2d at 405-06 (finding appropriate the entry of default judgment where the defendant had been properly served with the complaint and did not respond, despite repeated attempts to contact him). Accordingly, the Court should grant default judgment on the First Amended Complaint if Mr. Carter establishes the liability of Defendants Advanced Walk In Urgent Care, LLC, Union Multi-Care of Silver Spring, Union Multi-Care/Advanced Walk In Urgent Care and Ishtiaq A. Malik.[6]

---

[6] "As required by the Servicemembers Civil Relief Act of 2003, I have confirmed that Defendants are not currently in active military service." ECF No. 16-1 at 2 (Miller Aff. ¶ 6). *See* 50 U.S.C. app. § 521(b)(4) ("The requirement for an affidavit under paragraph (1) may be satisfied by a statement, declaration, verification, or certificate, in writing, subscribed and certified or declared to be true under penalty of perjury.").

That accepting as true Mr. Carter's well-pleaded allegations (the motion for default judgment, the affidavits of Mr. Carter, his counsel and the process server, the expert report of Paige Franklin, Ph.D., the American Sign Language (ASL) proficiency interview report for Mr. Carter, and the handwritten notes of June 15, 2012 and July 20, 2012), the undersigned finds Mr. Carter has proven the following:

(a) Mr. Carter is a deaf individual;

(b) Mr. Carter uses ASL as his primary means of communication;

(c) "ASL is an independent, fully developed language that uses a grammar system and syntax distinct from written and spoken English."  ECF No. 18-6 at 3 (Expert Report of Paige Elizabeth Franklin, Ph.D.);

(d) Paige Elizabeth Franklin evaluated Mr. Carter's reading and writing capabilities and from his written submission assessed whether the use of writing notes is an effective means of communication for Mr. Carter.;

(e) Paige Elizabeth Franklin formed the following opinion about the effectiveness of Mr. Carter communicating through writing notes in a health care setting:

> Mr. Carter is unable to effectively communicate about his healthcare needs via written notes.  He does not read well enough to independently comprehend medical terminology, treatment options, and medical test results.  His ability to express himself in written English is similarly limited to very basic, ungrammatical sentences and sentence fragments.  His reliance on ASL grammar to fill gaps in his knowledge increases the likelihood for misunderstandings when he communicates in written English. Through his incorrect use of word order, he may inadvertently express meanings different than those that he intends to convey.

ECF No. 18-6 at 5;

(f) The ASL Diagnostic and Evaluation Services, Gallaudet University, assessed Mr. Carter's proficiency in ASL.  The assessment revealed Mr. Carter has an ASL Proficiency

Interview Rating of 4 or Level 4.[7]   Signers such as Mr. Carter at Level 4 proficiency "are able to use an array of rhetoric (narration, description, argument, and hypothesis) with complex topics in paragraph-length discourse related to employment, current events, and matters of public and community interest . . . They are able to present information with sufficient accuracy, clarity, and vocabulary selection to convey intended meaning without misrepresentation or confusion. Comprehension is very good with demonstration of confidence in the discussion of most complex topics."  ECF No. 18-9 at 2;

(g) Mr. Carter is able to discuss and comprehend complex topics more effectively by signing ASL versus communicating by writing notes;

(h) On June 15, 2012, before departing for the Advanced Walk In Urgent Care and while at Advanced Walk In Urgent Care, Mr. Carter requested a qualified sign language interpreter. Before his arrival Defendants told Mr. Carter that Advanced Walk In Urgent Care would not provide the requested sign language interpreter.  After Mr. Carter arrived at the facility and renewed his request, Defendants did not provide a qualified sign language interpreter. Defendants instead communicated with Mr. Carter through writing notes;

(i) On June 22, 2012 Mr. Carter returned to Advanced Walk In Urgent Care for a follow-up appointment.  Mr. Carter requested a qualified sign language interpreter.  The requested interpreter was not provided.  Defendants instead communicated with Mr. Carter through writing notes;

---

[7] "Signers at this proficiency level are rarely taken as native signers. They demonstrate spontaneous elaboration on all familiar and most unfamiliar topics, however, there is incorporation of language patterns other than those of the target language.  They are able to use an array of rhetoric (narration, description, argument, and hypothesis) with complex topics in paragraph-length discourse related to employment, current events, and matters of public and community interest.  Although they command a good number of grammatical features, they are deficient in some areas such as cohesion, non-manual signals (NMS), and depiction.  They are able to present information with sufficient accuracy, clarity, and vocabulary selection to convey intended meaning without misrepresentation or confusion.  Comprehension is very good with demonstration of confidence in the discussion of most complex topics."  ECF No. 18-9 at 2 (Gallaudet University, American Sign Language Proficiency Interview, Functional Descriptions by Level).

(j) On June 26, 2012 Mr. Carter returned to Advanced Walk In Urgent Care because he was experiencing shortness of breath.  Mr. Carter did not understand why he had shortness of breath.  The lack of a qualified sign language interpreter prevented Mr. Carter from being fully informed and thus limited his ability to participate in making health-care decisions;

(k) On July 20, 2012 Mr. Carter returned to Advanced Walk In Urgent Care because he sustained a work-related injury.  Upon arrival he requested a qualified sign language interpreter in writing.  Mr. Carter asked in writing, "Why can't I get sign language interpreter."  A staff member wrote in response, "It's too expensive.  I understand that is your right to get one, but it only applies to medical office with 12 employees or more."  Advanced Walk In Urgent Care did not provide a qualified sign language interpreter and instead communicated with Mr. Carter through writing notes; and

(l) Mr. Carter lives near Defendants' facility.

To establish a violation of Section 504 of the Rehabilitation Act of 1973, Mr. Carter must prove that (1) he has a disability, (2) he is otherwise qualified[8]; (3) he was excluded from participation in, was denied the benefits of, or was subjected to discrimination solely by reason

---

[8] "(l) *Qualified handicapped person* means: . . .
   (4) With respect to other services, a handicapped person who meets the essential eligibility requirements for the receipt of such services.
 "(m) *Handicap* means any condition or characteristic that renders a person a handicapped person as defined in paragraph (j) of this section.'

45 C.F.R. § 84.3(l)(4), (m) (2013).

 "(j) *Handicapped person*—(1) *Handicapped persons* means any person who (i) has a physical or mental impairment which substantially limits one or more major life activities. . .
   (2) As used in paragraph (j)(1) of this section, the phrase: . . .
     (ii) *Major life activities* means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.

*Id.* § 84.3(j).

of his disability[9]; and (4) Defendants receive federal financial assistance.  *Proctor v. Prince George's Hosp. Ctr.*, 32 F. Supp. 2d 820, 826 (D. Md. 1998).  The First Amended Complaint alleges sufficient facts to support three of the four elements.  *See, e.g.,* ECF No. 3 ¶ 41 ("Defendants are recipients of federal financial assistance, including but not limited to their acceptance of Medicare and Medicaid.").

Section 504 of the Rehabilitation Act applies to health, welfare and other social services programs or activities receiving federal assistance.  Regulations promulgated under the Act are instructive.  *Proctor*, 32 F. Supp. 2d at 826.

### § 84.52 Health, welfare, and other social services.

(a) *General.*  In providing health, welfare, or other social services or benefits, a recipient may not, on the basis of handicap:

(1) Deny a qualified handicapped person these benefits or services;

(2) Afford a qualified handicapped person an opportunity to receive benefits or services that is not equal to that offered nonhandicapped persons;

(3) Provide a qualified handicapped person with benefits or services that are not as effective (as defined in § 84.4(b)) as the benefits or services provided to others;

(4) Provide benefits or services in a manner that limits or has the effect of limiting the participation of qualified handicapped persons; or

(5) Provide different or separate benefits or services to handicapped persons except where necessary to provide qualified handicapped persons with benefits and services that are as effective as those provided to others.

---

[9] "(a) *General.*  No qualified handicapped person shall, on the basis of handicap, be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination under any program or activity which receives Federal financial assistance."

*Id.* § 84.4(a).

(b) *Notice.*  A recipient that provides notice concerning benefits or services or written material concerning waivers of rights or consent to treatment shall take such steps as are necessary to ensure that qualified handicapped persons, including those with impaired sensory or speaking skills, are not denied effective notice because of their handicap.

(c) *Emergency treatment for the hearing impaired.*  A recipient hospital that provides health services or benefits shall establish a procedure for effective communication with persons with impaired hearing for the purpose of providing emergency health care.

(d) *Auxiliary aids.*  (1) A recipient to which this subpart applies that employs fifteen or more persons shall provide appropriate auxiliary aids to persons with impaired sensory, manual, or speaking skills, where necessary to afford such persons an equal opportunity to benefit from the service in question.

(2) The Director may require recipients with fewer than fifteen employees to provide auxiliary aids where the provision of aids would not significantly impair the ability of the recipient to provide its benefits or services.

(3) For the purpose of this paragraph, auxiliary aids may include brailled and taped material, interpreters, and other aids for persons with impaired hearing or vision.

45 C.F.R. § 84.52.

The undersigned notes Mr. Carter does not declare whether Defendants employ fifteen or more persons <u>or</u> fewer than fifteen persons.  Defendants have filed an affidavit and correspondence addressing this issue.  In the affidavit of July 11, 2014, Dr. Malik declares Advanced Walk In Urgent Care employed three individuals on July 20, 2012, the date of Mr. Carter's fourth and final visit to this facility.  *See* ECF No. 23.  In the correspondence of January 20, 2015 Dr. Malik certifies three employees worked under Advanced Walk In Urgent Care in the first and second quarters of 2012, *see* ECF No. 29, which would encompass Mr. Carter's first three visits to this facility on June 15, 22 and 26, 2012.

Despite the undersigned ordering Mr. Carter to supplement the record with regard to the number of individuals employed by Defendants during the time period relevant to the allegations in his First Amended Complaint, *see* ECF No. 21, and furthermore, despite the undersigned extending discovery for the sole purpose of Mr. Carter obtaining evidence about the number of individuals employed by Defendants, *see* ECF No. 26, Mr. Carter fails to present **any evidence** on this matter.  To establish a violation of Section 504 of the Rehabilitation Act, Mr. Carter must demonstrate Defendants failed to comply with a mandate, *i.e.,* "shall provide appropriate auxiliary aids to persons with impaired sensory, manual, or speaking skills, where necessary to afford such persons an equal opportunity to benefit from the service in question."  45 C.F.R. § 84.52(d)(1).  This mandate however applies to a recipient who "employs fifteen or more persons. . . ."  *Id.*  Mr. Carter has not challenged the evidence submitted by Defendants that **less than** 15 persons are employed.  Under this latter circumstance a recipient is not required to provide auxiliary aids if the provision of such auxiliary aids would significantly impair the recipient's ability to provide its benefits or services.  *Id.* § 84.52(d)(2).  Omitted from Mr. Carter's First Amended Complaint is any reference to the number of persons employed by Defendants.  Based on this omission and the lack of supplementation on this matter, the undersigned finds Mr. Carter has not established a legitimate cause of action in violation of Section 504 of the Rehabilitation Act.

Alternatively, the undersigned finds Defendants are not a hospital and Mr. Carter did not seek "emergency treatment" from them.  Advanced Walk In Urgent Care, LLC is an urgent care facility.  "Urgent care centers are setup to assist patients with an illness or injury that does not appear to be life-threatening, but also can't wait until the next day, or for primary care doctor to see them."  Mount Sinai Hospital, http://www.mountsinai.org/patient-care/service-areas/urgent-

care/what-is-urgent-care/ (last visited Mar. 31, 2015).   There is a distinction between urgent medical conditions and emergency medical conditions.

> Urgent medical conditions are ones that are not considered emergencies but still require care within 24 hours.  Some examples of such conditions include:
>
> • Accidents and falls
> • Sprains and strains
> • Moderate back problems
> • Breathing difficulties (i.e. mild to moderate asthma)
> • Bleeding/cuts - not bleeding a lot but requiring stitches
> • Diagnostic services, including X-rays and laboratory tests
> • Eye irritation and redness
> • Fever or flu
> • Vomiting, diarrhea or dehydration
> • Severe sore throat or cough
> • Minor broken bones and fractures (i.e. fingers, toes)
> • Skin rashes and infections
> • Urinary tract infections

*Id.*

The undersigned finds three (June 15, 2012; June 26, 2012 and July 20, 2012) of the four occasions Mr. Carter visited Defendants' facility constitute Mr. Carter seeking *urgent care*.   On June 15, 2012 Mr. Carter felt weak and contacted Defendants for medical care.   Mr. Carter's shortness of breath prompted him to visit Defendants' facility on June 26, 2012.   An unspecified work-related injury on July 20, 2012 led Mr. Carter to seek medical care from Defendants for a fourth time.   Since these medical conditions were not emergency medical conditions, Defendants were not required to establish a procedure for effective communication with hearing impaired persons in order to provide emergency health care.

There is not a *per se* rule that a hospital must utilize sign language interpreters to communicate with hearing impaired persons.   "In fact, the Supreme Court has held that sign language interpreters are not required when lip reading, or by extension other accommodations,

are sufficient." *Proctor*, 32 F. Supp. 2d at 827 (citing *Board of Education v. Rowley*, 458 U.S. 176 (1982)).  The Regulations reflect this sentiment.  *See* 45 C.F.R. § 84.4(b)(2).[10]

Nevertheless, the denial of a hearing-impaired individual's request for a sign language interpreter may constitute a violation of Section 504.  "The test is whether an interpreter was necessary to provide the hearing-impaired individual with an equal opportunity to benefit from the services provided by defendants to patients who do not suffer from a hearing impairment." *Estate of Ellen Alcalde v. Deaton Specialty Hosp. Home, Inc.*, 133 F. Supp. 2d 702, 707 (D. Md. 2001) (citing *Falls v. Prince George's Hosp. Ctr.*, 1999 U.S. Dist LEXIS 22551, Civil No. DKC 97-1545, slip op. at 17 (D. Md. March 16, 1999)).

Mr. Carter has presented sufficient evidence that communicating through writing notes on medical issues was not the most effective mode of communication for him.  The handwritten notes between Mr. Carter and Defendants' staff members however demonstrate Mr. Carter's ability to communicate via writing notes.

Mr. Carter knew, before he physically visited Defendants' facility for the first time, that Defendants would not provide a sign language interpreter if Mr. Carter came to the facility.  First Am. Compl. ¶ 11.  Despite this knowledge, Mr. Carter elected to visit Defendants' facility for his urgent, non-emergency medical condition on June 15, 2012.  He willingly returned to Defendants' facility for urgent, non-emergency medical conditions on June 26, 2012 and July 20, 2012 with full knowledge that Defendants do not provide sign language interpreters.  By law Defendants were not required to provide sign language interpreters.  Defendants implemented a procedure, *i.e.,* writing notes, to communicate as effectively as possible with Mr. Carter.  Under

---

[10] "For purposes of this part, aids, benefits, and services, to be equally effective, are not required to produce the identical result or level of achievement for handicapped and nonhandicapped persons, but must afford handicapped persons equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement, in the most integrated setting appropriate to the person's needs."

the circumstances of this case, the use of writing notes and the failure to provide sign language interpreters do not constitute a denial of equal access or an equal opportunity to participate in and benefit from Defendants' health care services.

## RECOMMENDATION

The undersigned summarizes the recommendation as follows:

That the Court *deny* Plaintiff's Second Motion for Entry of Default Judgment (ECF No. 18).

April 1, 2015                                    _____/s/_____
                                                 WILLIAM CONNELLY
                                                 UNITED STATES MAGISTRATE JUDGE